**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHRISTOPHER EASTERLING,

       *Plaintiff*,

    v.

DISTRICT OF COLUMBIA,

       *Defendant*.

Civil Action No. 1:24-cv-02973 (CJN)

**MEMORANDUM OPINION**

Plaintiff Christoper Easterling obtained an administrative order in his favor after a hearing officer determined that the District of Columbia Public Schools violated the Individuals with Disabilities Education Act (IDEA).  Easterling now seeks attorneys' fees and costs in the amount of $364,098.70.  The Court grants his request in part.

**Background**

In 2021, Easterling filed an administrative complaint against the District seeking a determination that it had denied him a free appropriate public education.  *See* ECF No. 8-1.  For relief, Easterling requested hundreds of hours of compensatory education services, such as independent tutoring, counseling, mentoring, and occupational therapy.  *Id.* at 38–39.  Following a hearing, an independent hearing officer awarded Easterling 218 hours of independent academic tutoring, 15 hours of independent counseling, and 22 hours of occupational therapy services.  *Id.* at 41.  In November 2021, the District issued an authorization letter for those services but with a service-completion deadline of October 27, 2022.  *See* ECF No. 11-1.  The District reissued the letter a month later, but this time with language stating that Easterling could request to extend that deadline.  ECF No. 11-2.

1

Several months later, Easterling sued the District under 42 U.S.C. § 1983, alleging that it failed to comply with the administrative hearing officer's determination by unilaterally imposing a deadline by which he had to use the awarded services. *See Easterling v. District of Columbia*, No. 22-cv-01386 (CJN), ECF No. 1. He moved for a preliminary injunction, *Easterling*, No. 22-cv-01386, ECF No. 2, but at a hearing on that motion, the District represented that Easterling's use of some awarded hours would not preclude him from seeking and obtaining an extension of the deadline for unused services. *Easterling*, No. 22-cv-01386, ECF No. 18 at 11–12. The District subsequently issued another authorization letter memorializing that representation. *See* ECF No. 11-3 ("Use of these services authorized by this letter does not waive your right to . . . later request and receive an extension."). In light of these developments, Easterling voluntarily dismissed his § 1983 action. *See Easterling*, No. 22-cv-01386, ECF No. 17.

Easterling now seeks attorneys' fees and costs for both the underlying administrative proceeding and § 1983 lawsuit in the amount of $364,098.70. *See* ECF No. 8 (Pl.'s Mot.). The District opposes any award on the ground that Easterling has not availed himself of any awarded services, but alternatively contends that any award should be significantly less than what Easterling seeks. *See* ECF No. 11 (Def.'s Opp.).

**Legal Standard**

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). "Courts follow a two-pronged inquiry to determine attorneys' fees under the IDEA by, first, determining if the party seeking fees is a 'prevailing party' and then determining what fees are 'reasonable.'" *Robinson v. District of Columbia*, 61 F. Supp. 3d 54, 58 (D.D.C. 2014) (quoting § 1415(i)(3)(B)(i)). To determine whether a party has prevailed, the Court of Appeals has set out the

following three-part test: "(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *Id.* at 59 (quoting *Green Aviation Mgmt. Co., LLC v. FAA,* 676 F.3d 200, 203 (D.C. Cir. 2012)). "This 'prevailing party' test applies generally to federal attorneys' fee-shifting statutes, including the IDEA." *Id.*

To determine whether an award of attorneys' fees is "reasonable," in turn, courts evaluate "(1) the number of hours reasonably expended in litigation; and (2) the reasonable hourly rate for the services provided." *Reed v. District of Columbia*, 843 F.3d 517, 520 (D.C. Cir. 2016) (citation and internal quotation marks omitted). The party seeking fees bears the burden of demonstrating that the requested fees are warranted. *See Robinson*, 61 F. Supp. 3d at 59 ("The fee applicant bears the burden of justifying the attorneys' fees requested.").

Thus, Easterling must show that he is a prevailing party, document the appropriate hours worked, and justify the reasonableness of the requested rate. *See Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C. Cir. 1995) ("A fee applicant bears the burden of establishing an entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates."). Once he has met this initial burden, there is "a presumption . . . that the number of hours billed and the hourly rates are reasonable." *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 203 (D.D.C. 2016) (citing *Covington*, 57 F.3d at 1110–11). "At that point, the burden shifts to the opposing party to 'provide specific contrary evidence tending to show that a lower rate would be appropriate.'" *Id.* (quoting *Covington*, 57 F.3d at 1109–10).

**Analysis**

### I.      Prevailing Party

As a threshold matter, the Court must decide whether Easterling is a "prevailing party." *See* 20 U.S.C. § 1415(i)(3)(B); *Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 79 (D.D.C. 2016) ("In awarding reimbursement of fees, the district court must first decide whether the party seeking the fees is a prevailing party and then determine whether the requested attorney's fees are reasonable.").   The District does not dispute that Easterling prevailed in the underlying administrative proceeding and is thus a prevailing party under the statute. Def.'s Opp. at 5.  Rather, it argues that because Easterling "has never availed himself of the compensatory education services that were awarded to him in 2021," *id.*, awarding attorneys' fees to his counsel would "unjustifiably" reward them "for litigation that ultimately failed to contribute to [Easterling's] well-being and proved wasteful," *E.M. v. Marriott Hosp. Pub. Chartered High Sch.*, 541 F. Supp. 2d 395, 399 (D.D.C. 2008).

To support its argument, the District relies on *E.M. v. Marriott Hospitality Public Chartered High School*.  In *E.M.*, the plaintiff sought attorneys' fees under the IDEA after prevailing in a second administrative due process proceeding.  *Id.* at 398.  In the first proceeding, the parties had reached a settlement requiring the student's school to conduct certain evaluations, and the school paid the necessary attorneys' fees for that litigation.  *Id.* at 396.  Dissatisfied with those evaluations, the plaintiff initiated a second hearing, at which the hearing officer ordered the school to fund independent evaluations at the parent's election.  *Id.* at 397.  But the plaintiff never obtained the independent evaluations and ultimately relied on the original evaluations that she previously rejected.  *Id.*  The court declined to award attorneys' fees for the plaintiff's success in the second

administrative proceeding because that litigation produced no meaningful benefit for the plaintiff and was effectively "superfluous." *Id.* at 399.

This case is different. True, at the time the parties filed their fee briefs, Easterling had not yet used any of his compensatory education services. ECF No. 11-5 ¶ 5. But unlike *E.M.*, he has not "abandon[ed]" his awarded services. *Cf. E.M.*, 541 F. Supp. 2d at 397 ("[C]ounsel for E.M. notified Marriott that E.M. was abandoning her request for additional evaluations."). In fact, during a recent hearing before Judge Friedrich, Easterling testified that he was still interested in using those services. *See Easterling vs. District of Columbia*, No. 20-cv-3219 (DLF), ECF No. 74 at 79, 85. Because Easterling remains both interested in and able to reap the rewards of the underlying administrative proceeding, it cannot be said that his attorneys' work "failed to contribute to [his] well-being and proved wasteful." *E.M.*, 541 F. Supp. 2d at 399. The Court therefore concludes that Easterling is a prevailing party.[1]

## II.     Reasonable Hourly Rate

The District also challenges Easterling's use of LSI *Laffey* Matrix rates. Def.'s Opp. at 11–21. For an IDEA fee award to be reasonable, it must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C); *see also id.* § 1415(i)(3)(B)(i). "Whether an hourly rate is reasonable turns on three sub-elements: (1) the attorney's billing practices, (2) the attorney's skill, experience, and reputation, and (3) the prevailing market rates in the relevant community." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (alterations adopted) (citation and internal quotation marks omitted). It appears the District only disputes the third element. *See* Def.'s Opp. at 11–21.

---

[1] The Court notes, however, that Easterling's limited awareness of the services awarded to him, and his prolonged failure to use them, are concerning. Absent his stated intent to utilize those services during the hearing in front of Judge Friedrich, it would be difficult to conclude that the underlying litigation conferred any meaningful benefit.

5

To establish the prevailing market rate, Easterling must "produce satisfactory evidence—in addition to [his] attorney's own affidavits—that [his] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *Covington*, 57 F.3d at 1108 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  If he meets this burden, "those rates are 'presumed to be . . . reasonable' unless and until the defendant offers 'equally specific countervailing evidence' supporting another rate." *DL vs. District of Columbia*, 924 F.3d 585, 591 (D.C. Cir. 2019) (quoting *Covington*, 57 F.3d at 1107, 1109).  The Court of Appeals has recognized "two separate, but inter-related, approaches to providing evidence of prevailing market rate." *Reed*, 843 F.3d at 521.  First, an IDEA practitioner can "show[] that IDEA litigation qualifies as 'complex federal litigation,'" and if no "compelling contrary evidence" is presented, the USAO *Laffey* Matrix rates are considered reasonable. *Lee v. District of Columbia*, 298 F. Supp. 3d 4, 13 (D.D.C. 2018).  "Alternatively, a fee applicant can 'establish the prevailing market rate by providing evidence of the fees charged, and received, by IDEA litigators.'" *Id.* (quoting *Reed*, 843 F.3d at 521).  Easterling pursues both options but succeeds at neither.

As to the first, Easterling provides "declarations from [four] lawyers explaining how and why IDEA litigation is particularly complex." Pl.'s Mot. at 11.

- Charles Moran avers that "work under the IDEA" has been "as complex as work involving the ICC," because IDEA cases require "specialized non-legal knowledge regarding special education." ECF No. 8-8 ("Moran Decl.") ¶¶ 14–15.  He also asserts that the "limited discovery and pretrial exchange between the parties in IDEA cases . . . usually makes the preparation and litigation . . . more complicated." *Id.* ¶ 16.

- Diana M. Savit states, like Mr. Moran, that "[e]very IDEA case requires specialized non-legal knowledge regarding special education" and competent IDEA litigators must have "knowledge of specialized disciplines including psychology, speech and language pathology, occupational therapy, physical therapy, and medicine, and others."  ECF No. 8-9 ("Savit Decl.") ¶ 8.  This is one of the reasons she finds "work under the IDEA to be at least as complex as employment discrimination and business dispute or other commercial work."  *Id.* ¶ 7.

- Domiento C.R. Hill explains that IDEA work is as complex as any other area of legal work because it "requires specialized non-legal knowledge," involves very limited discovery and pretrial exchange between the parties, which "makes preparation and litigation of IDEA cases more complicated," and presents "the same legal questions" as federal work.  ECF No. 8-10 ("Hill Decl.") ¶¶ 5–7.

- Alana Hecht says that she has found IDEA work "to be far more complex as [her] work in" employment discrimination litigation. ECF No. 8-11 ("Hecht Decl.") ¶ 4.  She asserts that the complexity results from the fact that IDEA cases require "specialized non-legal knowledge" and are much harder to prepare for due to the lack of discovery and pretrial exchange between the parties.  *Id.* ¶¶ 5–6.

Nothing in these affidavits establishes that IDEA litigation is categorically complex.  The declarants' statements about IDEA litigation requiring "specialized non-legal knowledge," *see, e.g.*, Savit Decl. ¶ 8, are "insufficient to demonstrate that IDEA cases involve complex federal litigation," *Reed*, 843 F.3d at 525 (internal quotation marks omitted); *see also White v. District of Columbia*, No. 24-cv-0769 (DLF), 2025 WL 2049220, at *4 (D.D.C. July 22, 2025) (finding affidavits discussing IDEA litigation's need for specialized non-legal knowledge to be insufficient

to show that that litigation is complex). And their assertions regarding limited discovery and pretrial exchange in IDEA litigation do not help either. *See Reed*, 843 F.3d at 525. In fact, "the absence of discovery may suggest that IDEA cases are not as complex as cases in which discovery is extensive." *Id.* At bottom, the declarations contain "conclusory statements that IDEA litigation is 'as complex' as other types of cases" that are "'complex federal litigation,'" but "absent an explanation of *why* this is so, [the declarations] cannot suffice to meet [Easterling's] burden." *Id.*

Easterling also argues that, even if IDEA litigation generally is not complex, the Court should apply the prevailing market rate for complex federal litigation in *this* case because *it* was uniquely challenging. *See* ECF No. 12 ("Pl.'s Reply") at 23–24. But "while some judges in this District have applied the USAO *Laffey* Matrix in the 'unusual case' where the applicant is able to show that *her* particular case is 'unusually complex,'" Easterling has failed to make that showing here. *Lee*, 298 F. Supp. 3d at 13 (citing *Cox v. District of Columbia*, 264 F.Supp.3d 131, 143 (D.D.C. 2017)). All Easterling does to demonstrate this case's complexity is recount some of the procedural history. *See* Pl.'s Reply at 23–24. He therefore has not demonstrated that the *Laffey* Matrix rates should presumptively apply. *Cf. Lee*, 298 F. Supp. 3d 4 at 13.

Because Easterling has failed both to show that IDEA litigation is categorically complex and that it is complex in this specific case, he must show the prevailing market rate by pointing to rates other IDEA litigators in the community *receive*. *See Reed*, 843 F.3d at 521 (explaining that the prevailing market rate can be established by "providing evidence of the fees charged, and *received*, by IDEA litigators" (emphasis added)). Easterling attempts to do this first by offering declarations from his own counsel. *See* ECF No. 8-5 ("Tyrka Decl.") ¶¶ 9–10; ECF No. 8-4 ("Ostrem Decl.") ¶¶ 7. But those "alone are insufficient because [he] must 'produce satisfactory evidence *in addition* to [his] attorney's own affidavits.'" *White*, 2025 WL 2049220, at *4

(emphasis added) (quoting *Eley*, 793 F.3d at 104). Moreover, Easterling's attorneys' affidavits are nearly identical to those deemed insufficient by other courts in this district. *See id.* (finding neither the Ostrem nor Tykra affidavit to be persuasive because they did not attest to the rates they actually received in IDEA cases, presented variability in their rates, and failed to adequately document what they actually billed); Tyrka Decl. ¶¶ 9–14; Ostrem Decl. ¶¶ 7–8. And the one third-party practitioner declaration that Easterling offers fares no better. *See Eley*, 793 F.3d at 101 (explaining that affidavits must "recite[e] the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases" to establish that the LSI *Laffey* matrix is the prevailing rate for IDEA cases); *White*, 2025 WL 2049220, at *5 (taking issue with affidavits failing to show the actual fees attorneys "*received*"); *see* Moran Decl. ¶ 7 ("I in particular have billed and have been paid by some paying clients for [ ] IDEA litigation work at hourly rates equal to those in what is commonly known as 'the *Laffey* matrix.'").

Easterling also tries to prove the prevailing market rate by pointing to cases in this district where full LSI *Laffey* Matrix rates were granted, but they do not move the needle. *See* Pl.'s Mot. at 9–10. Two of the cases applied LSI *Laffey* Matrix rates where the complexity of the underlying proceeding was undisputed. *See U.F. v. District of Columbia*, No. 19-cv-2164 (BAH), 2020 WL 4673418, at *4 n.3 (D.D.C. Aug. 12, 2020); *B.J. v. District of Columbia*, No. 19-cv-2163 (ZMF), 2020 WL 8512639, at *3 n.2 (D.D.C. Nov. 9, 2020), *report and recommendation adopted*, No. 19-cv-2163 (TSC), 2021 WL 5992052 (D.D.C. Feb. 10, 2021). And the other case was decided before the introduction of the Fitzpatrick Matrix. *See M.G. v. District of Columbia*, 15-cv-2239, 2021 WL 3507772 (D.D.C. Aug. 9, 2021). In any event, more recent decisions by courts in this district have overwhelmingly applied reduced Fitzpatrick Matrix rates for IDEA litigation. *See, e.g.*, *White*, 2025 WL 2049220, at *5; *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 16 (D.D.C. 2023);

9

*Rawlings v. District of Columbia*, No. 24-cv-2122 (SLS), 2025 WL 1432278, at *6–7 (D.D.C. May 19, 2025) (agreeing that "the Plaintiffs should receive only 75% of the applicable rates on the Fitzpatrick Matrix because the underlying IDEA administrative proceedings were not complex"). The Court agrees that, in this case, that same reduced rate (that is, 75% of Fitzpatrick Matrix rates) is appropriate. And while "the District has not engaged in dilatory tactics, the Court will apply the current Fitzpatrick rate since over four years have passed since [this] representation began." *White*, 2025 WL 2049220, at *5.

## III.   Number of Hours Reasonably Expended

Easterling also "bears the burden of demonstrating that the number of hours spent on a particular task is reasonable." *Alfonso v. District of Columbia*, 464 F. Supp. 2d 1, 3 (D.D.C. 2006) (citing *Holbrook v. District of Columbia*, 305 F.Supp.2d 41, 45 (D.D.C. 2004)). He can do so "by submitting an invoice that is sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Wood v. District of Columbia*, 72 F. Supp. 3d 13, 18 (D.D.C. 2014) (citation omitted). The Court retains discretion to reduce attorneys' fees awards if "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F)(iii).

### A.   The § 1983 Suit

The District asks the Court to deduct all time spent on the § 1983 suit, because Easterling was not a "prevailing party" in that litigation. Def.'s Opp. at 7. Easterling responds that work on the § 1983 suit is compensable here given that "federal action was necessary to secure the full relief ordered by the hearing officer." Pl.'s Reply at 4–7.

Easterling has not met his burden to show that bringing the separate suit was reasonable. Mr. Tyrka and Mr. Ostrem have significant IDEA litigation experience. In their own words, they

"specialize in IDEA litigation in this jurisdiction." Pl.'s Mot. at 5. So one would expect that they are familiar with the District's practice of including deadlines in its letters while also permitting extension requests. And even if they weren't, they were familiar with that practice in this case—the District included language in an updated authorization letter allowing Easterling to request an extension if he did not use all of the services by November 2022. ECF No. 12-7 ("You may request, in writing, an extension of the deadline for completion listed for the services above. Absent a written request for an extension, any unused services will be forfeited."); ECF No 12-6 at 4 (notifying Mr. Ostrem of the updated authorization letter). If Mr. Tyrka and Mr. Ostrem were reasonably concerned[2] that their client could somehow have been bound by the 12-month deadline despite the letter's express statement affording him the ability to request an extension, they could have sought reassurance via an agreement with the District instead of through a § 1983 lawsuit. When coupled with the understanding that "fee requests relating to separate administrative actions cannot be bootstrapped to other, successful complaints," *Dicks v. District of Columbia*, 109 F. Supp. 3d 126, 133 (D.D.C. 2015), it is evident that Easterling cannot recover these fees. The Court will therefore not reimburse counsel for any work related to the § 1983 lawsuit.

### B.    IEP Meetings

The District also asks the Court to exclude attorneys' fees for time spent attending IEP meetings. *See* Def.'s Opp. at 7–8. The District is correct that the IDEA prohibits reimbursement of attorneys' fees for time spent on IEP meetings, *see Tillman v. District of Columbia*, 123 F. Supp. 3d 49, 60 (D.D.C. 2015) ("This Court has repeatedly found, however, that legal services for such IEP-related purposes are not compensable under the IDEA."), and Easterling does not disagree.

---

[2] During the preliminary injunction hearing, counsel did not have support for the proposition that the doctrine of accord and satisfaction would bind Easterling to the District's unilateral deadline in light of the District's letter and even if Easterling expressly objected to that deadline.

*See* Pl.'s Reply at 12.  The Court will therefore not reimburse counsel for any work related to attending an IEP meeting.

### C.        Resolution Sessions

The District argues that Easterling's counsel billed for time worked on a non-compensable resolution session.  Def.'s Opp. at 8; *see* ECF No. 8-2 (time entries dated July 20, 21, 22, 23, 26, and 27, 2021).  Easterling disputes whether a resolution session occurred.  *See* Pl.'s Reply at 7–8.  According to him, for a meeting to constitute a "resolution session" under the IDEA, the "relevant member or members of the IEP Team who have specific knowledge of the facts in the complaint" and "a representative of the agency who has decisionmaking authority" must be present.  20 U.S.C. § 1415(f)(1)(B); § 1415(i)(3)(D)(ii)–(iii); *see* Pl.'s Reply at 8.  Easterling argues that "the District presents no evidence that such a session as defined by the statute occurred."  Pl.'s Reply at 8.

Easterling confuses the burden here.  It is *the plaintiff* who must present "'specific, undisputed record evidence' that the required parties are not present."  *White*, 2025 WL 2049220, at *2 (quoting *Reed*, 843 F.3d at 524).  Here, however, Easterling has presented evidence that "is disputed and far from clear."  *Id.*  First, the Hearing Officer stated in his determination that a "resolution session" was held on July 27, 2021—the same date Easterling's counsel billed for participation in "the scheduled settlement conference."  ECF No. 8-1; *see* ECF No. 8-2 at 5.  Also, Easterling's counsel implied in his own affidavit that at least one attendee at the meeting was a member of Easterling's IEP team.  *See* ECF No. 12-15 ¶ 6 ("DCPS attendees at the meeting included only three administrators . . . Were any of them to attend an IEP team meeting, it would be only in an administrative capacity.").  Finally, while the District's representative did not make an offer to resolve the case and "gave no indication that she possessed any settlement authority," Easterling's counsel offers no evidence to suggest that all of the administrators at the meeting

12

lacked settlement authority. *See generally* ECF No. 12-15; *cf. White*, 2025 WL 2049220, at \*2. "In sum, although the resolution session was unsuccessful, it appears that all parties viewed it as a resolution session, and the District complied with the statutory requirements by sending [three] representatives." *White*, 2025 WL 2049220, at \*2; *see* ECF No. 12-15 ¶ 6. Accordingly, the Court will not reimburse counsel for any work related to scheduling, preparing for, or attending that meeting. *See* ECF No. 8-2 at 4–5 (time entries dated July 20, 21, 22, 23, 26, and 27, 2021).

### D.      Clerical Tasks

The District objects to Easterling's counsel billing for tasks it sees as "not traditionally performed by an attorney." Def.'s Opp. at 9 (internal quotation marks omitted). The District lists many invoice entries that it believes should be reimbursed only at the applicable paralegal rate. *See id.* To the extent that those entries consist of tasks such as scheduling, writing and reviewing emails, confirming meeting dates, reviewing non-legal documents, scanning, copying, paginating, faxing, forwarding, and filing, the Court considers them clerical or administrative tasks rather than legal tasks and will permit counsel to receive fees but at 75% of the applicable Fitzpatrick matrix rate for paralegals. *See Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 341 (D.D.C. 2015) (awarding plaintiff's counsel fees at a reduced rate for clerical and paralegal-type work such as scanning, copying, paginating, faxing, forwarding, and filing); *DeLa Cruz v. District of Columbia*, 82 F. Supp. 3d 199, 207 (D.D.C. 2015) (reducing Plaintiff's overall fee award by 15% due to billing for administrative tasks such as scheduling, writing and reviewing emails, confirming meeting dates, and reviewing non-legal documents).

### E.      Excessive Time on Various Tasks

The District argues that an award should not include "devoting excessive amounts of time to various items." Def.'s Opp. at 10. The only items the District specifically takes issue with are

time entries for "discussions with Co-counsel re: seeking reimbursement of client's fees and costs." *Id.* at 9–19. The District does not explain why it was excessive for Mr. Ostrem to spend 3.7 hours, approximately 1% of the total time spent on this case, conferring with his co-counsel, and the Court will not reduce those hours.

### F.        Expert Fees

The District also challenges Easterling's attempt to recover $4,800.00 in expert fees. *See* ECF No. 11 at 10; ECF No. 8-2 at 14. Although the terms of the IDEA do not support the recovery of expert costs, D.C. law allows a court to "award reasonable expert witness fees as part of the costs to a prevailing party." *Wright, Next Friend of J.J. v. District of Columbia*, No. 18-cv-2818 (ABJ), 2019 WL 4737699, at *6 (D.D.C. Sept. 28, 2019) (quoting D.C. Code § 38-2571.03(7)(A)). "A prevailing parent bears the burden of establishing that the experts' rates are reasonable and based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* (citation and internal quotation marks omitted).

Easterling fails to provide the documentation necessary to establish the reasonableness of his expert witness expenses. He supplies verified statements and resumes from Dr. Jay R. Lucker and Chithalina Coleman, but none of the documents states the rates that these experts charged in this case, nor do they state the rate that clients have routinely paid for their services. ECF No. 14-17; ECF No. 14-18. Dr. Lucker's declaration, for example, states that he "charged [Easterling's] parent [his] standard rate," and that other clients "have paid for [his] services at similar rates," but he does not state what those rates are. ECF No. 14-17, ¶ 4. Ms. Coleman's declaration does the same. ECF No. 14-18, ¶ 4. Thus, the record does not establish that these experts' rates "'are based on the *rates* prevailing in the community' for other experts providing similar services in similar cases." *Wright*, 2019 WL 4737699, at *7 (emphasis added) (quoting D.C. Code § 38-

14

2571.03(7)(B)).  Because the Court finds that Easterling has not met his burden to establish the prevailing community rates for his experts, "it will deny [his] request for expert costs without prejudice."  *Id.*; *see Lynn v. District of Columbia*, No. 23-cv-2648 (DLF), 2024 WL 3967286, at *4 (D.D.C. Aug. 27, 2024).

## IV.    Request for Additional Payment and Post-Judgment Interest

Easterling argues that the Court should also impose some sort of deterrent to discourage the District's delay in payment.  Pl.'s Mot. at 17.  The District contends that no authority supports Easterling's request for a flat monthly penalty.  Def.'s Opp. at 25.  Acknowledging that the Court has authority under 28 U.S.C. § 1961(a) to award post-judgment interest, however, the District requests that the Court set a deadline for payment of such interest, if awarded, 30 days from the entry of judgment.  *Id.*  Easterling for his part "has no objection" to post-judgment "interest beginning from 30 days after the fees order."  Pl.'s Reply at 30.  In light of the mandatory nature of statutory post-judgment interest, *see* 28 U.S.C. § 1961(a) ("Interest *shall* be allowed on any money judgment in a civil case recovered in a district court." (emphasis added)); *see also Akinseye v. District of Columbia*, 339 F.3d 970, 972 (D.C. Cir. 2003), and the agreement among the parties about the timing, the Court authorizes post-judgment interest at the rate set forth in 28 U.S.C. § 1961 beginning 30 days from entry of a final fee judgment.

### Conclusion

For the foregoing reasons, Easterling's Motion for Attorneys' Fees and Costs, ECF No. 8, is granted in part and denied in part.  Easterling shall revise his fee petition in a manner consistent with this Memorandum Opinion and submit a revised final order to the Court on or before April 17, 2026.  Prior to submitting that order, Easterling shall share his revised calculations with the District so that it may raise any objections not resolved by this Opinion.  The parties must work in

15

good faith to resolve any disputes.  When Easterling submits the revised petition and order, he shall note whether the District contests any portion of it.


DATE:  April 6, 2026

CARL J. NICHOLS
United States District Judge

16